Case number 25-5105, Ryan Franke v. Kenny Janes. Argument not to exceed 15 minutes per side. Mr. Astortino, you may proceed for the appellant. And I'm sorry. Thank you. Rob Astorino on behalf of the appellant Ryan Franke. I would like to reserve three minutes, please. Fine. Okay, this case involves two core rights guaranteed under the Constitution. Fourth Amendment right to be free from unnecessary seizure. The Seventh Amendment right to a parties jury trial. 1983 is the avenue for which we pursue those. I believe we will spend a large portion today discussing the factual nature of the case, which in 1983 is somewhat common, as the Supreme Court has recently reaffirmed the necessity of wading into the fact-bound morass, as they call it in Barnes v. Phoenix, Felix. Ultimately, the question at a reasonable level that we are trying to decide here is that when a handcuffed suspect who is expressing verbal frustration, but is not verbally defiant, is not trying to escape, and has not made any overt verbal or physical threats to anyone, subject to the use of force that is on the same level as a takedown or use of a taser. I believe the clearly established case law says that the answer to that is no. There are several facts in this case that speak to the need for less force than was used. Certain facts should be undisputed as they were captured on a body camera. The plaintiff in this case, Ryan Franke, at the time the police arrived, had recently been involved in a fight. The police did not fully understand the nature of what had happened when they arrived at the scene. They were trying to figure that out. He was in a car. He was backing out of a parking spot. He was about to leave the scene because in his mind, you know, everything had been taken care of. Everyone had settled down at the scene. It was time to leave. The officers asked him, you know, if he would stop and re-park the car, which he did without incident. Even though at that time he was not under arrest or being detained, he followed the officer commands and he re-parked the car so that they could talk to him. I worry that your time is going to expire before you get to the key, which is your client was handcuffed. And you're not claiming the handcuffs are too tight now. So that's out. Your client was handcuffed and we, at least I have seen the video. I'm sure my colleagues have as well. Where your client, it's like a two-minute situation. Your client is being led by Officer Janes to the police car. And during that time, there's a dispute of fact, arguably, between you and the other side as to whether Janes unreasonably used excessive force to twist the wrist of your client. Am I capturing the whole issue here before us? That's the core of the case and I do not mean to be patronizing. So, yes, you're right. Cutting directly to the chase, I believe there are a few key points that need to be made. However, one of the reasons that I did get into the setting of the scene somewhat is that now that Barnes v. Felix is out, all those questions become much more relevant than they used to be. You're not supposed to segment the situation. Not anymore. Which we all have to get used to now. But, agreed, cutting to the chase, I do believe the largest fact that is important before the core six to ten seconds of where we're really getting to in this case is the fact that the defendant still apparently disputes that is very visible on body camera that Frankie allows himself to be handcuffed without any resistance whatsoever. And that handcuffing was accomplished. Everything was fine at that point. He's being walked to the car and while he's expressing verbal frustration again before these core six to ten seconds, he does have some choice language for what's happening to him. But he believes he's innocent and ultimately he was right. The officer is very dismissive. He's not trying to de-escalate. And at some point he informs Mr. Frankie that he believes that another person involved has visible marks on her neck that she was claimed caused by him that my client very much disputes. And he understandably momentarily pauses to say to his family, hey, this fact is incorrect. The officer at that point pushes him forward with a simultaneous command maybe generous there of let's go. Let's keep moving, something to that effect. But before that time, he had not issued any firm commands to keep walking, not to stop. And Mr. Frankie was proceeding to the car as the officer wanted without the necessity of those firm verbal commands. So there's no evidence that he actually disobeyed the officer at any point, which is also extremely important. So now we're in these core six to ten seconds here. And this is where things get a little bit tricky on the body camera. And I apologize, the practice of law has taken some toll on my flexibility. But if we can imagine that the hands, you know, are behind here, the body camera cuts off right about here. Everything that's important in this case is from here now. This is the area that we're concerned with. And you cannot see the officer's hands or Mr. Frankie's hands at the core moments in this case. So I'm going to ask a really stupid question. I apologize. Your client calls it a half Nelson. What is a half Nelson? So a half Nelson, since you didn't grow up. And my name is really Nelson. So I'm very interested in what a half Nelson is. I assume you did not grow up with older brothers.  Essentially, and again, my flex, it would be easier to demonstrate with two people. But essentially, the person behind in a half Nelson puts their hand underneath the arm. And a true half Nelson starts pushing the head down. I think that we can agree that that, there's no hand on my client's head at any point. However, you know, I believe what he's referring to and what he might have felt was a hand coming up on his back at some point during this altercation. I am not sure whether that happened or not. But to me, that is also relatively unimportant to the issues here. Because the six to ten seconds that are important, the beginning of them is when the officer kind of, my client claims, the officer kind of shoves him forward, maybe uses a half Nelson, maybe pulls his arms up. But what he ultimately says in his deposition testimony is where the injury occurred is after he was pushed against the police car. And that's when the twisting happened. And at that point, even if there had been a struggle, which again, we dispute, it had resolved at that point. You know, there was no struggle at that point. Is your client's, any of his body in the frame of the cam when the alleged excessive force occurred? Once again, his body is in the frame, but the key portions are all below where the frame cuts off. Okay. But his body, a portion of his body is in the cam the whole time that the alleged excessive force is occurring? The portion of my client's body that is in the camera after the non-resistive handcuffing is virtually the same. And I would describe it as on the front of the body being from about the chest up.  And on the back being from about the shoulder blades. Right. I guess what I'm asking is, is there any point where all the body is out of the frame while the excessive force is occurring? I believe there may be a half second or a second where my client alleged he was shoved forward by the officer, but without having the video in front of us, I can't say that for sure. So this is not a case where, like in the Scott Lee Harris case, where there was clear video showing what happened. We have instead the need to look at deposition transcripts, and we are supposed to take the facts in the light most favorable to your client, because this is a qualified immunity case, where they're seeking qualified immunity, and it was granted by the district judge. And so if there are fact questions, then fact questions that are key to the determination should be resolved by the jury. Is that essentially the point here that you're wanting us to take? That is one of the core pieces of my argument, and the second core piece of my argument is that, you know, based on that factual record, it is just not possible to get to the qualified immunity threshold, because what you need to do that, after you've been handcuffed, and based on the thorough case law that's been discussed by both parties, is to either have an attempt to escape, or a reasonable threat. Once the handcuffing occurs, the traditional Graham analysis becomes less important, because Graham was really analyzing, you know, what happened before an arrest. You know, before the handcuffs were placed on, or before the person was under control. But if you want to extend the core Graham factors after someone has been handcuffed, the cases, and I believe the ones that speak most clearly to these, are Barton v. Martin, McDowell, and those two will help. But they say that once a suspect is handcuffed and under control, you need some sort of threat. Because they discuss when the threat dissipates, the need for force gets ratcheted down. And ultimately, the legal question is what degree of force is appropriate, not whether any force whatsoever is appropriate. If the officer had merely been leading him to the car by, you know, having his hand on the upper arm, you know, leading him to the car, I mean, that's an every push and shove situation. That's not what we're talking about here. But the testimony in the record in this case is that the injury that was caused, the splitting of this tendon between these two bones, requires a significant amount of force. This is not an every push and shove situation. You know, we believe... I know he had surgery, but it is the splitting of a tendon between two bones in the wrist? Yeah, I believe it's shortened to TFC, but I believe the medical term is the triangular fibrocartilage. And what was described to me is that there's two bones in the lower arm, the radius and the ulna, and there is a tendon which connects them right here, and that that was torn. And that that sort of injury is...it's not the kind of injury that can be caused by a fist, it's not the kind of injury that can be caused by overuse, it's not the kind of injury that can be caused by degeneration. It has to be a significant, forceful, twisting action which splits that tendon off. We believe that that amount of force is similar to the...in the force continuum. To a takedown or the use of a taser, and that's why we've selected those cases to make our point. Ultimately, I think the fact that helps us the most, and we may get some pushback on this, but the fact that helps us the most is that the defendant's own police practices expert admits in his deposition that if Frankie's version of facts is correct, this was too much force for the situation. I simply don't understand how you can come back from that statement by their expert. He claims that he doesn't see the version of facts the same as my client, which is understandable, but he admits in essentially a hypothetical that I gave him, that if my client is right about how this happened, it was not an appropriate use of force. I believe my time's running out, unless there are further questions, we'll save it for a moment. Good morning, Your Honors. May it please the Court, Counsel? I'm Mark Osborne. I represent Officer Kenny James in this case where we're seeking an affirmation of the District Court's granting of qualified immunity. The law recognizes, Your Honors, that officers must make split-second decisions in volatile, uncertain, and rapidly evolving situations each and every day that they're on the street. On March 12th of 2022, Officer James responded to a volatile situation involving multiple altercations and allegations of domestic violence that he learned about when he got there. He didn't seek confrontation when he got there. He sought to diffuse a potentially violent situation and to restore order. When he arrived at the scene, there were tens of people surrounding him. Mr. Frankie's family was there. Everybody was shouting at one another. And this whole thing started when Officer James was trying to remove Mr. Frankie from that situation. So in the moment, faced with a potential threat, Officer James made judgment calls under pressure, and that is the very circumstance where the Sixth Circuit has consistently held that qualified immunity applies. So can I ask you a question? I don't disagree with anything that you've said here. Yes, ma'am. Those split-second moments, qualified immunity, kind of might even be said to be at its peak. But here, where we've got a video that at least covered the time period where everything occurred, but doesn't blatantly contradict some of the things that Plaintiff says happened, and is frankly just unclear in terms of what happened, whether or not there was a pulling away or whether or not there was a pushing away, whether or not there was a tripping, what the half-Nelson move actually looked like. Aren't those facts that are important to determine the amount of force that was appropriate under the circumstances? Well, I think it's important under Graham, the Supreme Court requires us to consider the totality of the circumstances. And Barnes has made that abundantly clear, right? Yes, abundantly clear. And in fact, what the Court actually said in Barnes is deciding whether the use of force was objectionably reasonable demands careful attention to the facts and circumstances relating to the incident, as then known to the officer, clearly. The Court goes on to say, so these factors do not displace the ultimate inquiry, which is whether the totality of the circumstances justifies the amount of force used. But if the totality of the circumstances, I guess you're getting to the crux of what my question is, if the totality of the circumstances has gaps and holes, from judges, we're just judges, you know, we're not the trier of fact here. How can we get to a position where we can say, yes, it was objectively reasonable for Officer James to do what he did, if there are gaps in what actually happened, particularly with respect to movements by Mr. Frankie and actions by Officer James? Well, the video in this case only answers part of the questions, clearly, okay? And the law is clear under Scott that the gaps in the video, you revert to the presumption or the, you know, the... Viewing the facts in the light most favorable for the plaintiff, right? And you guys dispute those facts. Exactly. So, but qualified immunity decisions are made each and every day without videotape. And so then we, as Judge Moore pointed out earlier, we look to the rest of the evidence. And we look to the totality of the circumstances. So suppose that the, there's no video. And suppose that the evidence consists of Mr. Frankie saying, Officer James twisted my arm without any reason to do so. And Officer James says, no, I didn't. Isn't that a fact question? Not under a totality of the circumstances evaluation. The answer is no, not necessarily. So what's the totality of circumstances here that warrants you winning? And I'll short, try to shortcut it. I know that there was this fight in the gym or outside the gym and that there's the accusation of domestic violence. And all of that, I would say hypothetically, justifies handcuffing Mr. Frankie and taking him away from the crowd. So that the Officer James and whoever other officers are coming can figure out what's going on. I am going to hypothesize that that's perfectly fine. But the problem is that Frankie says, they twisted my arm purposefully when it wasn't in any way necessary. And you say, oh, yes, it was necessary. Isn't that a fact question for a jury? No, ma'am, I'm saying that it's reasonable under the totality of the circumstances. It's reasonable to twist his arm in a way that causes a tendon to split or whatever? Well, with all due respect, Judge Moore, let's look at what Mr. Frankie actually says to that point. In his complaint, he claims that Officer James violently and intentionally twisted Mr. Frankie's arm. He twisted Mr. Frankie's hands and arms with the intention of causing pain. In his answers to interrogatories, he states, James told me to stop pulling away, threw me against the car and twisted my wrist in a painful manner. In his deposition, he testified, he puts me in a half Nelson, which kind of shoves me forward. And that's on the body cam where we see him accuse me of pulling away from him. And that's when he grabs my wrist and torques it to put me up against the Durango. I think Mr. Astorino has just withdrawn the half Nelson testimony. But this is what he has sworn to. Aren't those points that you would make to the trier a fact that he has, in your view, a constantly evolving statement under oath of what actually happened to him? But all of it, he would then say in response, all of it is showing that in the end, he has this wrist injury that requires surgery. And then you can say, well, maybe he had hurt his wrist before. It's sort of getting back to Judge Davis. We're not triers of fact here. We have to take the evidence in the light most favorable to Mr. Frankie at this point in time. Don't we? Yes, ma'am, that is the standard. Let's give him the benefit of the doubt. Officer James concedes that he used his left hand to apply pain or pressure to Mr. Frankie's left elbow. And he concedes that he lifted Mr. Frankie's arm so that he could reduce the separation between their bodies as they moved towards the police cruiser. So we agree. There's no dispute that Officer James used some degree of force. It's the plaintiff's burden in a qualified immunity case to show that that use of force was unreasonable. And when you consider the totality of the circumstances, when you consider the severity of the crimes at issue, when you consider whether Mr. Frankie was an immediate threat after he was handcuffed, the gram analysis doesn't stop after he's handcuffed. The question then becomes, is he an immediate threat on the way from the moment he was handcuffed to the time he got to the police cruiser? And how do we determine that? What evidence is there that's undisputed that helps us to come to that conclusion? The testimony of the parties is virtually consistent in that way. Well, except that Mr. Frankie says he wasn't pulling away and your client says he was. Whether or not he was resisting makes a difference, right? And I think that's where the video is helpful because I think that in the video you can tell that Mr. Frankie is posing a deliberate threat due to both his verbal hostility and his deliberate act of defiance. Okay? Can you walk me through that? Because I'm going to tell you, I've watched that video many times and so I'm playing it in my head now, thinking about what it is that you could be pointing to. Okay. So with regard to the verbal hostility, the district court noted that it's not entirely clear in the Sixth Circuit whether or what type of level of verbal hostility will justify force. We disagree with that because the case law, I believe, establishes that there is a certain level of verbal hostility. And that level of hostility is that if Mr. Frankie is defiantly refusing to comply with the police officer's commands to calm down, then that type of verbal hostility goes into that equation. Okay? And it's undeniable when you watch the video that there's verbal hostility. I know that... I wasn't asking about that. I was asking about the other... Okay. So then we go into the deliberate act of defiance. Again, Mr. Frankie alleges that Officer Jaynes used painful words to describe Mr. Frankie. And he's using pain compliance to bring him under control. And it's a plaintiff's burden under these circumstances to prove that, considering the totality of the circumstances, that the amount of force used was unreasonable. And that's what he's failed to do. Doesn't Jaynes agree that he used pain compliance? He certainly does. And the only expert to... Is there a fact question then as to whether the degree of pain compliance is what caused the injury to the wrist? And whether it was unreasonable excessive force to use that degree of pain compliance under the totality of the circumstances? The district court correctly determined that, considering the totality of the circumstances, the amount of force used by Officer Jaynes was reasonable. And the plaintiff in this case has failed to meet its burden of proving otherwise. Mr. Astorino brought up Mr. Combs, who was retained as a police practices expert in this case. I'm sorry, I'm just thinking about this. It seems like your argument is directed more to a jury than a court. Do you have any cases? I realize it's the... So you're raising qualified immunity. So I guess you're saying that it has to be clearly established in the case law. What cases are out there that are even... Are there any that are close to the facts here? That's not the defendant's burden. I know, but I'm just asking you. Do you know of any cases that are even remotely close? That were specifically where we have a person who is in handcuffs and pain compliance techniques used? Yeah. I think that... No. That goes specifically to the... I'm going to ask your opposing counsel that question too. Not specifically... I guess that seems to be what we ought to be looking at. Are there any cases out there that are kind of in the area? Which begs the question... Look at for the qualified immunity question. Which begs the question, is there a violation of clearly established law? And again, that's the plaintiff's burden. So basically we have to accept what the plaintiff is alleging occurred. I think you're trying to do that. So you accept that. And then the question is, is there something in the case law that would show that's clearly established as a constitutional violation? That is the plaintiff's burden, and the plaintiff has failed to meet that burden. Well, trying a hypothetical out. Suppose that what Officer Jaynes is doing is pain compliance where he takes the suspect's wrist, which is in... The wrists are in handcuffs, takes the arm and breaks it in half, the bone. It's pain compliance, but the person in the handcuffs says, I wasn't really doing anything that bad that would require pain compliance to be used to the degree to break my arm. Would that be a fact question for a jury? That would be evidence of gratuitous violence, which is clearly unlawful. And in this case, there is absolutely no evidence of gratuitous violence. And here you have a man who, after everybody calmed down, and he realized these guys went to high school together, and when cooler heads are prevailing, he apologized to the officer over and over and over again. He told the officer, I love you, dude. Is that the type of thing that you say to a man who had just used gratuitous violence to break your wrist? Mr. Frankie knows that that did not occur, and he hasn't proven in this case that it occurred. And the district court was correct in ruling that the plaintiff has failed to meet his burden of establishing a violation of clearly established law under the Fourth Amendment. And your red light is on, so that's a way to end. It is. Thank you, Your Honor. So let me just pick up with that last question. I'm really looking for some case law here, not facts. I understand. I want to stay away from the facts, because I think they're disputed. But I believe we have cited two very specific cases in our reply brief. I cannot think of them off the top of my head, but they are listed in there. One of them involves an unhandcuffed suspect that claims his arm was chicken wing to the point that it audibly popped. He was not even in handcuffs, and the court ruled that that was excessive because he was under control at that point. He was underneath an officer. The one that I believe is even more closely related to our set of facts is the one involving the DUI arrest of the woman on the boat. The court did say that a control hold or some minor pain compliance may have been acceptable in that case. But the fact that they twisted her arms and manipulated them in a way that caused pain or caused injury was unnecessary because she was handcuffed and under control. Those two cases are both appendix cases. Unfortunately, with these, we find the need to wade into these appendix cases a lot. However, I do believe... Those are Sixth Circuit cases. That is correct. There's another Sixth Circuit appendix case involving an officer who slapped someone who was handcuffed in a cop car because he had a quote-unquote smart mouth. That was found to go back to a jury. There are two published cases, Morrison and McDowell, which call into question the need for force when a person is handcuffed and subdued. And I believe the quote from McDowell, which I believe is a case decades old at this point, is that anyone who is not trying to escape or hurt anyone once they've been handcuffed, the need for force is non-existent. Barton v. Martin, a much more recent case, comments that once someone is handcuffed and under control, the threat dissipates, which dissipates the need for force. I would like to comment on one fact that was brought up during his argument. Jaynes has said that he used pain compliance, but he actually described that pretty explicitly and said that it was a squeezing of the arm or a squeezing of the shoulder somehow with a pressure point. The injury that my client has objectively suffered in this claiming that was caused from this altercation could not have possibly been caused by what Jaynes said that he did. I see my time is up. I appreciate it. Your time is up as well. Thank you both for your argument. The case will be submitted.